# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JAMEEL R. COLES,                         )        1:04-CV-6581 AWI JMD HC
                                         )
                    Petitioner,          )
                                         )        FINDINGS AND RECOMMENDATION
        v.                               )        REGARDING PETITION FOR WRIT OF
                                         )        HABEAS CORPUS
                                         )
DAVID L. RUNNELS, Warden,                )
                                         )
                    Respondent.          )
_____  )

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Merced County Superior Court.  (Answer at 1.)  Petitioner was convicted of 1) first degree murder with the special circumstance that the murder was committed during the crimes of robbery, kidnaping, and carjacking (Cal. Penal Code §§ 187, 190.2(a)(17)); 2) kidnaping to commit robbery (Cal. Penal Code § 209(b)); 3) carjacking (Cal. Penal Code § 215(a)); and 4) robbery (Cal. Penal Code § 211).  (Answer at 1-2; Lodged Doc. 1.)  The court sentenced Petitioner to life without the possibility of parole for the murder charge and stayed the remaining sentences. (Answer at 2.)

On November 17, 2000, Petitioner filed an appeal in the California Court of Appeal.  On

1   February 21, 2002, the court affirmed the judgment as to the issues relevant in this petition.  (Lodged

2   Docs. 2-3.)

3         On April 2, 2002, Petitioner filed a petition for review in the California Supreme Court.  On

4   May 1, 2002, the court summarily denied review.  (Lodged Docs. 4-5.)

5         On November 26, 2002, Petitioner filed a petition for writ of habeas corpus in the Merced

6   County Superior Court.  On April 10, 2003, the court denied the petition in a reasoned opinion.

7   (Lodged Docs. 6-7.)

8         On July 7, 2003, Petitioner filed a petition for writ of habeas corpus in the California Court of

9   Appeal.  On November 13, 2003, the court summarily denied the petition.  (Lodged Doc. 8; Answer

10  at 2-3.)

11        On December 15, 2003, Petitioner filed a petition for writ of habeas corpus in the California

12  Supreme Court.  On July 21, 2004, the court summarily denied the petition.  (Lodged Docs. 9-10.)

13        On November 15, 2004, Petitioner filed the instant petition in this Court.  The petition

14  presents the following seven grounds for relief: 1) prosecutor improperly used peremptory challenges

15  to exclude two African-Americans from the jury; 2) district attorney presented false and perjurious

16  testimony; 3) trial court improperly gave CALJIC 6.11, 8.26, and 17.41.1; 4) ineffective assistance of

17  trial counsel; 5) ineffective assistance of appellate counsel; 6) trial court violated Petitioner's due

18  process rights by denying motion to sever, denying motion to suppress, denying motion to change

19  venue, failing to set aside plea agreements, and failing to call additional jurors; and 7) fundamental

20  miscarriage of justice as conviction was based on insufficient evidence.

21        On April 5, 2005, Respondent filed an answer to the petition.

22        On May 3, 2005, Petitioner filed a traverse to the answer.

23        On September 5, 2006, Petitioner filed a supplemental brief.

24                          **FACTUAL BACKGROUND**[1]

25  Prosecution Evidence

26  _____ On the night of December 4, 1997, a California Highway Patrol officer stopped David Parker

27

28  _____

[1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of February 21, 2002 and are presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1); Lodged Doc. 3.

1    for driving 90 miles an hour on Highway 99 near Atwater.  Since he was driving a rented car on a

2    suspended license and the renter was not in the car, officers impounded the car and gave him, his

3    passengers, and their luggage a ride to a restaurant with a pay phone in the parking lot and a hotel

4    across the street.  His passengers were Petitioner and three female juveniles, Nailah W. (who later

5    pled guilty in juvenile court to accessory to murder) and Janelle G. and Myan J. (both of whom later

6    pled guilty in juvenile court to first degree murder).

7         A long-time friend of Thompson's saw him and his van in the parking lot of the restaurant at

8    that time.  Nailah heard Petitioner and Parker talk about needing a ride.  Myan asked Thompson for a

9    ride.  Petitioner, Parker, Nailah, Janelle, and Myan all got into Thompson's van with their luggage.

10   As Thompson drove, Nailah heard Petitioner and Parker whispering to each other that they had to

11   "get the man's van and ditch him somewhere."

12        After driving for a while, Thompson got off the freeway, stopped by a pay phone, opened the

13   sliding side door, and helped everyone take the luggage out of the van.  While he was doing that,

14   someone knocked him out by hitting him in the head.  He fell halfway inside and halfway outside the

15   van.  Parker said, "Shit, I busted my fist."

16        Petitioner and Parker put Thompson into the van.  Petitioner sat down on top of him and

17   pressed his knee into his back.  Myan helped hold him down.  As Parker drove, Thompson came to

18   and pleaded for them to let him go.  Parker drove onto a side road and stopped the van.

19        Petitioner and Parker dragged Thompson out of the van and beat and kicked him as he lay on

20   the ground.  Petitioner or Janelle smothered him with a pillow.  Petitioner poured kerosene from a

21   lantern onto his body.  Myan struck a match to the kerosene and set his body on fire.  A passerby

22   found his burned body the next morning.

23        Parker drove to Las Vegas where the van was abandoned after Thompson's possessions were

24   removed and the van was wiped down for fingerprints.  Police who questioned Nailah on suspicion

25   of prostitution later that month learned of the murder and found the van after taking statements first

26   from her and then from Petitioner.  Police found Janelle's fingerprint on a window of the van.  Inside

27   Petitioner's car, police found Thompson's cell phone and Petitioner's and Parker's fingerprints.

28        Other property missing from Thompson's body and van were credit cards and a gold chain.

1   The cause of death was blunt force injury to the right side of the head and brain.  The fatal skull

2   fracture that caused the brain to hermorrhage was consistent with kicking the head, not with hitting

3   the head with a fist.  The second degree burns on the body were not a cause of death, as the burning

4   occurred at the time of or after death.

5            Defense Evidence

6            When Petitioner talked with Parker about stealing a car, he meant taking a car with a

7   screwdriver as he did in his youth, not carjacking anyone.  He was surprised when Parker hit

8   Thompson in the head.  Physically he could have walked away, but once people "back home" found

9   out about that he would have been in "a lot of trouble."  He had a good idea he and Parker were

10  going to keep the van.  He helped Parker push Thompson back into the van and held him down while

11  Parker drove.

12           After Parker drove onto a side road and stopped the van, Thompson kicked Petitioner, who

13  got upset and kicked him back four or five times.  He kicked him in the chest but not in the head.

14  Janelle and Myan kicked Thompson, put a pillow on his face, and held him down until he stopped

15  moving.  Petitioner did not recall who got the lantern or who poured kerosene on Thompson.

16  Petitioner was surprised at everything that was going on.

17                                    **DISCUSSION**

18  **I. Jurisdiction**

19           Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

20  to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

21  the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

22  375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

23  Constitution.  In addition, the conviction challenged arises out of the Merced County Superior Court,

24  which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly,

25  the Court has jurisdiction over the action.

26           On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

27  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

28  Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997),

1   *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997),

2   *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997) (holding AEDPA only

3   applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment

4   of the AEDPA; thus, it is governed by its provisions.

5   **II.  Legal Standard of Review**

6          This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

7   pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

8   Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

9          The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

10  Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003).

11  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of

12  the claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

13  clearly established Federal law, as determined by the Supreme Court of the United States" or

14  "resulted in a decision that was based on an unreasonable determination of the facts in light of the

15  evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at

16  70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

17         As a threshold matter, this Court must "first decide what constitutes 'clearly established

18  Federal law, as determined by the Supreme Court of the United States.'"  <u>Lockyer</u>, 538 U.S. at 71,

19  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

20  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

21  of the relevant state-court decision."  <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412.  "In other words,

22  'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set

23  forth by the Supreme Court at the time the state court renders its decision."  <u>Id.</u>

24         Finally, this Court must consider whether the state court's decision was "contrary to, or

25  involved an unreasonable application of, clearly established Federal law."  <u>Lockyer</u>, 538 U.S. at 72,

26  *quoting* 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may grant

27  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

28  question of law or if the state court decides a case differently than [the] Court has on a set of

1   materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

2   "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

3   court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

4   applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

5        "[A] federal court may not issue the writ simply because the court concludes in its

6   independent judgment that the relevant state court decision applied clearly established federal law

7   erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

8   federal habeas court making the "unreasonable application" inquiry should ask whether the state

9   court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

10        Petitioner has the burden of establishing that the decision of the state court is contrary to or

11   involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle,

12   94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

13   Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

14   decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.

15   1999).

16        AEDPA requires that we give considerable deference to state court decisions. The state

17   court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

18   interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*,

19   537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

20   **III.  Review of Petitioner's Claims**

21        **A.  Ground One**

22        Petitioner argues that his equal protection rights were violated when the prosecutor

23   improperly used peremptory challenges to exclude two African-Americans from the jury pool.

24        This claim was presented in an appeal to the California Court of Appeal, which affirmed the

25   relevant portion of the judgment on February 21, 2002.  (Lodged Docs. 2-3.)  The issue was then

26   raised in a petition for review to the California Supreme Court, which summarily denied review.

27   (Lodged Docs. 4-5.)  The California Supreme Court, by its "silent order" denying review, is

28   presumed to have denied the claims presented for the same reasons stated in the opinion of the lower

1   court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

2          In rejecting Petitioner's claim, the Court of Appeal found that the record supported the trial

3   court's finding that there were legitimate, race-neutral reasons to excuse the two prospective,

4   African-American jurors.  (Lodged Doc. 3 at 8.)

5          Purposeful exclusion of jurors on account of race violates the Equal Protection Clause.

6   Batson v. Kentucky, 476 U.S. 79, 84 (1986).  "In *Batson,* we outlined a three-step process for

7   evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal

8   Protection Clause. . . . First, the defendant must make a prima facie showing that the prosecutor has

9   exercised peremptory challenges on the basis of race.  Second, if the requisite showing has been

10  made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the

11  jurors in question.  Finally, the trial court must determine whether the defendant has carried his

12  burden of proving purposeful discrimination."  Hernandez v. New York, 500 U.S. 352, 358-59

13  (1991) (citations omitted).

14         The state court's determination that Petitioner's equal protection rights were not violated by

15  the exclusion of the prospective, African-American jurors was not unreasonable.  The first African-

16  American juror at issue indicated on her jury questionnaire that her oldest brother was on death row

17  for murder and that her son had been charged with sex with a minor.  (ART at 203-04.)  The trial

18  court then questioned her in chambers about participating as a juror in the following exchange:

19

20         [The Court]:  Anything about those experiences have any impact on you being a
           juror?

21         A.  Only looking at these two young men my son is only 22 and I just like, oh, if my
22         son was in there for murder.

23         [The Court]:  Tell me, is that going to have an impact on you?

24         A.  I would like to say no.

25         [The Court]:  You think you can sit and listen to evidence and base your decision on
           what you see and hear in the courtroom?

26         A.  Probably.

27         [The Court]:  You understand probably at this point is not good enough for me?

28  (ART at 204.)  Later, when asked if she could put her emotional baggage behind her, listen to the

evidence, and reach a decision, she stated that she could.  (ART at 204-05.)

The second prospective, African-American juror at issue indicated on her jury questionnaire that she was "saddened that young black men were on trial for the act," adding that "I really do not trust the police."  (ACT at 1069-70.)  The trial court then questioned her in chambers about participating as a juror in the following exchange:

> [The Court]:  You've indicated that you don't trust the police.  What I need to know is would a police officer have a leg down as far as credibility goes before they've even testified just because of their occupation?
>
> A.  From what I've seen on TV.
>
> [The Court]:  You believe television is a reliable source of information.
>
> A.  Yes.
>
> [The Court]:  What I need to know is can you put that aside?  Can you sit and watch and listen because a police officer has beaten up Rodney [K]ing or shot that young man in New York 41 times or things of that nature, can you put that aside and judge the credibility of what you see here in the courtroom?
>
> A.  Yes.

(ART at 192-93.)

When the prosecutor was invited to make a record of his reasons for exercising peremptory challenges against the two prospective, African-American jurors, he identified the second juror's statements that she did not trust the police and that she was saddened that black men were on trial for the crime.  (Lodged Doc. 6, Ex. F at 239-40.)  As to the first juror, the prosecutor identified the fact that she had a brother on death row, a son that had been charged with a crime, and that she had stated that she would not know what to do if it was her son on trial.  (Id. at 240.)  The evidence shows that the state court's determination was not unreasonable, as there were valid, race-neutral reasons for the prosecutor to exercise peremptory challenges against the two prospective, African-American jurors.

**B.  Ground Two**

Petitioner argues that the district attorney knowingly used the perjured testimony of Janelle and Myan to obtain his conviction.  Petitioner claims that Janelle and Myan committed perjury by testifying that they were not personally involved in the murder after both pled no contest to first degree murder in juvenile court pursuant to a plea agreement.  Petitioner also points to the testimony

1    of Nailah which contradicted the testimony of Janelle and Myan that they were not physically

2    involved in the murder.  (See CT at 427-33.)

3         This claim was presented in an appeal to the California Court of Appeal, which affirmed the

4    relevant portion of the judgment on February 21, 2002.  (Lodged Docs. 2-3.)  The issue was then

5    raised in a petition for review to the California Supreme Court, which summarily denied review.

6    (Lodged Docs. 4-5.)  The California Supreme Court, by its "silent order" denying review, is

7    presumed to have denied the claims presented for the same reasons stated in the opinion of the lower

8    court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

9         In rejecting Petitioner's claim, the Court of Appeal found that the evidence did not disclose

10   that Janelle and Myan committed perjury and that, even if it did, any error in admitting the testimony

11   was harmless because other evidence of Petitioner's guilt was abundant.  (Lodged Doc. 3 at 10-11.)

12        "[D]eliberate deception of a court and jurors by the presentation of known false evidence is

13   incompatible with rudimentary demands of justice. . . . [T]he same result obtains when the State,

14   although not soliciting false evidence, allows it to go uncorrected when it appears.  Thereafter *Brady*

15   *v. Maryland* held that suppression of material evidence justifies a new trial irrespective of the good

16   faith or bad faith of the prosecution. . . . We do not, however, automatically require a new trial

17   whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to

18   the defense but not likely to have changed the verdict . . . .  A finding of materiality of the evidence

19   is required under [*Brady*].  A new trial is required if the false testimony could . . . in any reasonable

20   likelihood have affected the judgment of the jury."  Giglio v. United States, 405 U.S. 150, 153-54

21   (1972) (citations and quotation marks omitted).

22        The state court's determination that Petitioner's rights were not violated when the prosecutor

23   used the testimony of Janelle and Myan was not unreasonable.  At the preliminary hearing and at

24   trial, Janelle and Myan both testified that they were not physically involved in the murder.  (CT at

25   67-69, 101, 105, 146-48, 162, 176; RT at 813-16, 916-18, 939.)  Nailah, in contrast, testified that

26   Janelle and Myan kicked decedent, that Myan took his gold chain, that Janelle smothered him with a

27   pillow, and that Myan set him on fire.  (RT at 529-32, 591-95.)

28        The fact that Nailah's testimony was contrary to that of Janelle and Myan does not show that

1  their testimony was false.  Further, the fact that Janelle and Myan pled no contest to first degree

2  murder does not show that their subsequent testimony was false, as their no contest pleas could have

3  been based, not on their physical participation in the murder, but instead on a conspiratorial

4  agreement with Petitioner to steal the van.  As the murder occurred as a probable and natural

5  consequence of the theft of the van, Janelle and Myan would have been jointly responsible for the

6  murder under California law even if they did not personally take part in the physical assault.  See

7  People v. Morante, 20 Cal.4th 403, 417 (1999) ("[T]he act of one [conspirator] is the act of all.  Each

8  is responsible for everything done by his confederates, which follows incidentally in the execution of

9  the common design as one of its probable and natural consequences.").  Petitioner has not shown that

10  the prosecution used false evidence to obtain his conviction.

11        **C.  Ground Three**

12        Petitioner argues that the trial court violated his constitutional rights by giving CALJIC

13  instructions 6.11, 8.26, and 17.41.1.

14        1.  CALJIC 17.41.1

15

16        Petitioner argues that the use of CALJIC 17.41.1 infringed upon his Sixth and Fourteenth

17  Amendment rights to "a unanimous jury verdict and to have the jury free to use its power of

18  nullification."  (Lodged Doc. 11 at 2.)  The instruction given reads as follows:

19        The integrity of a trial requires that jurors, at all times during their deliberations,
        conduct themselves as required by these instructions.  Accordingly, should it occur
20        that any juror refuses to deliberate or expresses an intention to disregard the law or to
        decide the case based on penalty or punishment, or any other improper basis, it is the
21        obligation of the other jurors to immediately advise the Court of the situation.

22  (CT at 580.)

23

24        This claim was presented in an appeal to the California Court of Appeal, which affirmed the

25  relevant portion of the judgment on February 21, 2002.  (Lodged Doc. 3 at 17; Lodged Doc. 11 at 2.)

26  The issue was then raised in a petition for review to the California Supreme Court, which summarily

27  denied review.  (Lodged Docs. 4-5.)  The California Supreme Court, by its "silent order" denying

28  review, is presumed to have denied the claims presented for the same reasons stated in the opinion of

the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that Petitioner did not cite any evidence, such as juror misconduct, coercion, or deadlock, showing that the jury had applied CALJIC 17.41.1 in a way that violated the Constitution.  (Lodged Doc. 3 at 17.)

The state court's determination was not unreasonable because no Supreme Court case establishes that such an instruction violates any constitutional right.  Brewer v. Hall, 378 F.3d 952, 955-56 (9th Cir. 2004) ("It is clear, however, that the California appellate court's holding was not contrary to or an unreasonable application of clearly established Supreme Court precedent, because no Supreme Court case establishes that an instruction such as CALJIC 17.41.1 violates an existing constitutional right.").

2.  CALJIC 6.11 and 8.26

Petitioner argues his rights were violated when the trial court instructed the jury with CALJIC 8.26 because it expands co-conspirator liability under the first degree felony murder rule in a manner inconsistent with California law.  Petitioner also argues that the instruction uses vague and undefined legal phrases resulting in insufficient notice of potential liability.  The instruction as given reads as follows:

> If a number of persons conspire together to commit the crime of kidnapping for robbery, or kidnapping, or carjacking, or robbery, and if the life of another person is taken by one or more of them in the perpetration of, or an attempt to commit that crime, and if the killing is done in furtherance of the common design and to further that common purpose, or is an ordinary and probable result of the pursuit of that purpose, all of the co-conspirators are equally guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental.

(CT at 564.)

Petitioner further argues that the trial court's error in instructing the jury with CALJIC 8.26 was compounded by its use of CALJIC 6.11.  Petitioner claims that CALJIC 6.11 further expands conspiracy liability under the felony murder rule in a manner that is contrary to California law.  The instruction as given reads as follows:

Each member of a criminal conspiracy is liable for each act and bound by each

declaration of every other member of the conspiracy if that act or declaration is in furtherance of the object of the conspiracy.

The act of one conspirator pursuant to or in furtherance of the common design of the conspiracy is the act of all conspirators.

A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co-conspirator to further the object of the conspiracy, even though that crime was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of that crime.

You must determine whether a defendant is guilty as a member of a conspiracy to commit the originally agreed upon crime or crimes, and, if so, whether the crime alleged in Count I was perpetrated by co-conspirators in furtherance of that conspiracy and was a natural and probable consequence of the agreed upon criminal objective of that conspiracy.

(CT at 572-73.)

These claims were presented in an appeal to the California Court of Appeal, which affirmed the relevant portion of the judgment on February 21, 2002.  (Lodged Docs. 2-3.)  The issue was not, however, raised in the petition for review to the California Supreme Court or in the state habeas petitions.  (Lodged Docs. 4, 6, 8-9.)

"A federal court has the authority to review a federal constitutional claim presented by a state prisoner if available state remedies have been exhausted.  If state remedies have not been exhausted, a district court must dismiss a petition filed pursuant to section 2254.  If a federal constitutional claim can no longer be raised because of a failure to follow the prescribed procedure for presenting such an issue, however, the claim is procedurally barred and the petition must be denied."  Johnson v. Lewis, 929 F.2d 460, 463 (9th Cir. 1991) (citations omitted); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (finding claims procedurally defaulted where they were presented to the state intermediate appellate court, but not included in a petition for discretionary review to the state supreme court).

Here, Petitioner's claims regarding CALJIC 6.11 and 8.26 are procedurally defaulted because he raised them on direct review to the Court of Appeal, but failed to present them on direct appeal to

1    the California Supreme Court within the time allowed, and because he can no longer raise the claims

2    in the California Supreme Court, as he cannot renew claims actually denied on direct review in a

3    petition for writ of habeas corpus.  Cal. Rules of Court, Rule 8.500(e)(1) ("A petition for review

4    must be served and filed within 10 days after the Court of Appeal decision is final in that court under

5    rule 8.264."); see In re Waltreus, 62 Cal.2d 218, 225 (1965) ("[H]abeas corpus ordinarily cannot

6    serve as a second appeal."); Forrest v. Vasquez, 75 F.3d 562, 563-64 (9th Cir. 1996) (finding claim

7    procedurally defaulted because it was not presented to California Supreme Court on direct review

8    after being raised in the Court of Appeal and because *Waltreus* prohibits state habeas review of a

9    claim raised during the direct appeal process).

10       **D.  Ground Four**

11       Petitioner argues that he received ineffective assistance of trial counsel because counsel did

12   not interview vital witnesses or object to the improper jury instructions.

13       These claims were presented in a petition for writ of habeas corpus to the Merced County

14   Superior Court, which denied the petition in a reasoned opinion on April 10, 2003.  (Lodged Docs.

15   6-7.)  The issues were then raised in petitions for writ of habeas corpus to the California Court of

16   Appeal and California Supreme Court, which summarily denied the petitions.  (Lodged Docs. 8-10;

17   Answer at 2-3.)  The Court of Appeal and California Supreme Court, by their "silent orders" denying

18   the petitions, are presumed to have denied the claims presented for the same reasons stated in the

19   opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

20

21       The law governing ineffective assistance of counsel claims is clearly established for the

22   purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151

23   F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective

24   assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668,

25   687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

26   counsel's performance was deficient, requiring a showing that counsel made errors so serious that he

27   or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466

28   U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard

of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Id. at 688.  The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.  However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance.  Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S. 648, 659 & n.25 (1984).  Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

1.  Failure to interview witnesses

Petitioner claims that his counsel should have located and interviewed the two officers who detained him and the nurse who treated him to corroborate his claims that his statement to police was not voluntary, as it resulted from illness, and that he repeatedly requested an attorney.  In rejecting his claim, the Superior Court found that sickness does not preclude a person from validly waiving his rights and that Petitioner failed to present sworn evidence in support of his claim that the witnesses

1   would corroborate his claims.  (Lodged Doc. 7 at 2-4.)

2       The state court's determination was not unreasonable.  Petitioner has not provided any sworn

3   statement disclosing the identity of the witnesses or setting forth the substance of what their

4   testimony would have been.  The only evidence of their expected testimony is Petitioner's assertion

5   that it would have supported his claims.  However, there is no evidence that it would have been

6   sufficient to compel a different result.  See Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir.

7   1985) (recognizing that complaints based upon uncalled witnesses are disfavored because the

8   presentation of testimony is a matter of strategy and because speculation as to what other witnesses

9   would have testified to is uncertain); U.S. v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) ("Cox

10  has never appeared in any proceeding involving Cockrell, nor has Cockrell produced an affidavit

11  from Cox suggesting the content of his projected testimony.  In similar circumstances, this Court has

12  viewed with great caution claims of ineffective assistance of counsel when the only evidence of a

13  missing witness's testimony is from the defendant.").  Further, the fact that Petitioner signed a refusal

14  of medical treatment is contrary to his claim that he was extremely ill and the transcript of the police

15  questioning contradicts Petitioner's claim that he was denied access to an attorney.  (CT at 441-43;

16  ACT at 1757-62.)  Petitioner has not shown that there was a reasonable probability of a different

17  result if counsel had located and interviewed the specified witnesses.

18      2.  Failure to object to the use of CALJIC 17.41.1

19

20      Petitioner argues that his counsel was ineffective in not objecting to the use of CALJIC

21  17.41.1 because it improperly compromised the private nature of the jury's deliberations and because

22  it constituted an improper anti-jury nullification instruction.  In rejecting the claim, the Superior

23  Court found that counsel was deficient in failing to object to the use of the instruction as it had been

24  the subject of numerous challenges.  (Lodged Doc. 7 at 4.)  However, the court found that Petitioner

25  failed to establish prejudice resulting from the instruction as the California Supreme Court has found

26  that giving the instruction does not violate a defendant's rights or raise constitutional concerns.  (Id.)

27      The state court's determination was not unreasonable.  Petitioner cannot show prejudice

28  caused by counsel's failure to object to the instruction because the California Supreme Court has

1  determined that giving the instruction does not constitute error.  People v. Engelman, 28 Cal.4th 436,

2  449 (2002) ("As we have explained, the Court of Appeal rejected defendant's claim that the giving of

3  CALJIC No. 17.41.1 constituted error, and we agree.").

4       3.  Failure to object to the use of CALJIC 6.11 and 8.26

5

6  Petitioner argues that his counsel was ineffective in not objecting to the use of CALJIC 6.11

7  and 8.26 because they unfairly expanded first degree felony murder liability beyond what is

8  authorized by California law, because they improperly reduced the prosecutor's burden of proof, and

9  because they included legal phrases which are vague and undefined.  In rejecting the claim, the

10  Superior Court found that Petitioner was not prejudiced by counsel's failure to object to the

11  instructions because the Court of Appeal found that they accurately stated the law.  (Lodged Doc. 7

12  at 4.)

13       The state court's determination was not unreasonable.  Petitioner cannot show prejudice

14  caused by counsel's failure to object to the instructions because his substantive challenge to the

15  instructions was rejected by the Court of Appeal.  (Lodged Doc. 3 at 13-14.)

16       **E.  Ground Five**

17       Petitioner argues that he received ineffective assistance of appellate counsel because counsel

18  did not argue that 1) the trial court erred in failing to set aside the plea agreements of Janelle and

19  Myan; 2) the trial court erred in failing to call additional jurors; 3) the trial court erred in denying the

20  motion to sever Petitioner's trial from the trial of co-defendant Parker; 4) the trial court erred in

21  denying the motion to suppress Petitioner's statement; and 5) Petitioner was deprived of effective

22  assistance of trial counsel.

23       These claims were presented in a petition for writ of habeas corpus to the Merced County

24  Superior Court, which denied the petition in a reasoned opinion on April 10, 2003.  (Lodged Docs.

25  6-7.)  The issues were then raised in petitions for writ of habeas corpus to the California Court of

26  Appeal and California Supreme Court, which summarily denied the petitions.  (Lodged Docs. 8-10;

27  Answer at 2-3.)  The Court of Appeal and California Supreme Court, by their "silent orders" denying

28

1   the petitions, are presumed to have denied the claims presented for the same reasons stated in the

2   opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

3       Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

4   Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

5   assistance of appellate counsel are reviewed according to *Strickland 's* two-pronged test.  See, e.g.,

6   Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847

7   (9th Cir. 1986).  Therefore, as above, a defendant must show that appellate counsel's advice fell

8   below an objective standard of reasonableness and that there is a reasonable probability that, but for

9   counsel's unprofessional errors, defendant would have prevailed on appeal.  Miller, 882 F.2d at 1434

10  & n.9, *citing* Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849.  However, appellate counsel

11  does not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  Jones

12  v. Barnes, 463 U.S. 745, 751-54 (1983); Miller, 882 F.2d at 1434 n.10.  The weeding out of weaker

13  issues is widely recognized as one of the hallmarks of effective appellate advocacy.  Miller, 882 F.2d

14  at 1434.  As a result, appellate counsel will frequently remain above an objective standard of

15  competence and have caused his client no prejudice for the same reason--because he declined to raise

16  a weak issue.  Id.

17      1.  Failure to raise issue of setting aside plea agreements

18

19      Petitioner argues that his appellate counsel was ineffective because he did not argue that the

20  trial court erred in failing to set aside the plea agreements of Janelle and Myan.  Petitioner argues

21  that Janelle and Myan perjured themselves by testifying that they did not physically participate in the

22  murder after pleading no contest to first degree murder in juvenile court.  In rejecting the claim, the

23  Superior Court found that Petitioner did not make a sufficient showing of perjury and that, even if

24  the issue had been raised, Petitioner failed to show a reasonable probability of a different result as

25  the Court of Appeal found that other evidence of Petitioner's guilt was abundant.  (Lodged Doc. 7 at

26  5.)

27      The state court's determination was not unreasonable.  Petitioner has not shown that Janelle

28  and Myan perjured themselves, as discussed previously in part III.B.  Further, he has not established

a reasonable probability of success on appeal if the claim was raised as the Court of Appeal found

that other evidence of Petitioner's guilt was "abundant."  (Lodged Doc. 3 at 11.)

2.  Failure to raise issue of calling additional jurors

Petitioner argues that his appellate counsel was ineffective in not arguing that the trial court

erred in failing to call additional jurors so that there would be African-Americans on the jury.  In

rejecting the claim, the Superior Court, noting that Petitioner cited no case law in support of the

claim, found that counsel was not deficient as the similar *Batson/Wheeler* issue, which was

supported by case law, was raised on appeal.  (Lodged Doc. 7 at 5.)

The state court's determination was not unreasonable.  Counsel raised the *Batson/Wheeler*

issue challenging the exclusion of the prospective, African-American jurors--an issue similar to that

of whether the trial court should call additional jurors to ensure there were African-Americans on the

jury.  Counsel is not required to raise every colorable claim.  Jones v. Barnes, 463 U.S. 745, 751-54

(1983); Miller v. Keeney, 882 F.2d 1428, 1434 & n.10 (9th Cir. 1989).  Further, Petitioner has not

shown a reasonable probability that he would have prevailed on the issue on appeal, as he is not

entitled to a jury made up in whole or in part of members of his own race.  Powers v. Ohio, 499 U.S.

400, 404 (1991) ("[A] defendant has no right to a 'petit jury composed in whole or in part of persons

of [the defendant's] own race.'").

3.  Failure to raise issue of severing trial

Petitioner argues that his appellate counsel was ineffective because he did not argue that the

trial court erred in denying the motion to sever Petitioner's trial from co-defendant Parker's trial.

Petitioner claims that his redacted statement, which was used in lieu of severing the trial, unfairly left

him as the only male mentioned as being present at the murder scene.  In rejecting the claim, the

Superior Court found that there was no showing that the use of the redacted statement caused

prejudice to Petitioner as there were a number of other witnesses who placed co-defendant Parker at

the murder scene.  (Lodged Doc. 7 at 6.)

The state court's determination was not unreasonable, as Petitioner has not shown prejudice

resulting from the use of his redacted statement.  While the statement does not mention Parker as

being present during the murder, there was a significant amount of other evidence that placed Parker at the scene and implicated him in the killing.  (CT at 309-55; see, e.g., RT at 526-32, 586-94, 809-16, 914-18, 936-39.)

### 4.  Failure to raise issue of suppression of Petitioner's statement

Petitioner argues that his appellate counsel was ineffective because he did not argue that the trial court erred in denying Petitioner's motion to suppress his statement to police.  As discussed above, Petitioner claims that his trial counsel should have interviewed the two officers who detained him and the nurse who treated him to corroborate his claims that his statement to police was not voluntary, as it resulted from illness, and that he repeatedly requested an attorney.  In rejecting his claim, the Superior Court found that sickness does not preclude a person from validly waiving his rights and that Petitioner failed to present sworn evidence in support of his claim that the witnesses would corroborate his claims.  (Lodged Doc. 7 at 2-4, 6.)

The state court's determination was not unreasonable.  As discussed previously in part III.D.1, Petitioner has failed to present sworn evidence identifying the specific witnesses or demonstrating the substance of the testimony they would have given.  Further, the fact that Petitioner signed a refusal of medical treatment is contrary to his claim that he was extremely ill and the transcript of the police questioning contradicts Petitioner's claim that he was denied access to an attorney.  (CT at 441-43; ACT at 1757-62.)  Petitioner has not shown a reasonable probability of success if the issue was raised on appeal.

### 5.  Failure to raise issue of ineffective assistance of trial counsel

Petitioner argues that his appellate counsel was ineffective in not raising the issue of the ineffectiveness of his trial counsel.  As discussed above, Petitioner claims that his trial counsel should have interviewed the detaining officers and nurse and that counsel should have objected to the use of CALJIC 6.11, 8.26, and 17.41.1.  In rejecting the claim, the Superior Court found that appellate counsel was not deficient in failing to raise the issue of trial counsel's ineffectiveness, as the court had already concluded that trial counsel was not ineffective.  (Lodged Doc. 7 at 6.)

The state court's determination was not unreasonable.  As discussed previously in part III.D,

Petitioner has failed to show that his trial counsel was ineffective.  Petitioner has therefore failed to show that his appellate counsel was ineffective in not raising the issue on appeal.

**F.  Ground Six**

Petitioner argues that his due process rights were violated when the trial court 1) denied the motion to sever; 2) denied the motion to suppress; 3) failed to set aside the plea agreements; 4) failed to call additional jurors; and 5) denied the motion for change of venue.  As to the first four claims, Petitioner makes the same arguments that he makes in part III.E as to his ineffective assistance of appellate counsel claims.  Petitioner argues that the denial of the motion for change of venue violated his due process rights because it is unlikely that the jury in Merced County was impartial based on the extent of the media coverage of the crime, the nature of the crime, and the small, close-knit community in which it took place.

These claims were presented in a petition for writ of habeas corpus to the Merced County Superior Court, which denied the petition in a reasoned opinion on April 10, 2003.  (Lodged Docs. 6-7.)  The issues were then raised in petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court, which summarily denied the petitions.  (Lodged Docs. 8-10; Answer at 2-3.)  The Court of Appeal and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

A federal court will not review claims in a petition for writ of habeas corpus if the state court has denied relief on those claims on a state law ground that is independent of federal law and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  This doctrine of procedural default is based on the concerns of comity and federalism.  Id., at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules.  Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263 (1989).

If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-05 (9th Cir. 1993); Coleman, 501 U.S. at 750; Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2000).

Here, citing to *In re Dixon*, 41 Cal.2d 756 (1953) and *In re Walker*, 10 Cal.3d 764 (1974), the Superior Court rejected Petitioner's claims finding them procedurally barred since they were not raised on appeal. The court further found that the claims lacked merit because of the reasons discussed in part III.E and because there was no evidence that Petitioner did not receive a fair trial due to the denial of his motion for change of venue. (Lodged Doc. 7 at 7.)

Petitioner's claims are procedurally defaulted as the *Dixon* rule is independent of federal law and because Petitioner has not set forth any argument demonstrating the inadequacy of the rule. Protsman v. Pliler, 318 F.Supp.2d 1004, 1006-08 (S.D. Cal. 2004) (finding *Dixon* rule to be independent when default applied subsequent to *In re Robbins*, 18 Cal.4th 770 (1998)); Bennett v. Mueller, 322 F.3d 573, 585-86 (9th Cir. 2003) (stating that, once the state has adequately pled a state procedural ground as an affirmative defense, petitioner bears the burden of "asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule"). Further, Petitioner has not shown cause for his failure to appeal the issues and actual prejudice or that application of the rule would result in a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. 478, 488 (1986) (stating that demonstrating cause must ordinarily turn on whether the prisoner can show that some objective factor impeded compliance with the state's procedural rule).

**G.  Ground Seven**

Petitioner argues that his conviction was a fundamental miscarriage of justice because there was insufficient evidence to support his conviction.

This claim was presented in a petition for writ of habeas corpus to the Merced County Superior Court, which denied the petition in a reasoned opinion on April 10, 2003. (Lodged Docs.

6-7.)  The issue was then raised in petitions for writ of habeas corpus to the California Court of

Appeal and California Supreme Court, which summarily denied the petitions.  (Lodged Docs. 8-10;

Answer at 2-3.)  The Court of Appeal and California Supreme Court, by their "silent orders" denying

the petitions, are presumed to have denied the claims presented for the same reasons stated in the

opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting the claim, the Superior Court found that a sufficiency of the evidence claim is not

cognizable in a state habeas petition and that the claim was barred because it was not raised on direct

appeal.  (Lodged Doc. 7 at 7.)  While the Superior Court did not directly cite any case for the

proposition that the claim was procedurally barred, the court's reasoning implicates the holdings of

In re Lindley and In re Dixon.  See In re Lindley, 29 Cal.2d 709, 723 (1947) (stating that claim

challenging the sufficiency of the evidence is not a proper issue for state habeas petition); In re

Dixon, 41 Cal.2d 756, 759 (1953) (stating that, in the absence of special circumstances, habeas will

not lie where claimed errors could have been, but were not, raised upon a timely appeal).

The Dixon and Lindley rules are both independent of federal law and both are adequate, as

Petitioner has not met his burden of demonstrating the inadequacy of the rules.  See Carter v.

Giurbino, 385 F.3d 1194, 1197-98 (9th Cir. 2004) (holding that Lindley rule is independent and

adequate); Protsman v. Pliler, 318 F.Supp.2d 1004, 1006-08 (S.D. Cal. 2004) (finding Dixon rule to

be independent when default applied subsequent to In re Robbins, 18 Cal.4th 770 (1998)); Bennett v.

Mueller, 322 F.3d 573, 585-86 (9th Cir. 2003).  Further, Petitioner has not shown cause for the

default and actual prejudice or that application of the rules would result in a fundamental miscarriage

of justice.  His claim is therefore procedurally defaulted.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

1   of the Local Rules of Practice for the United States District Court, Eastern District of California.

2   Within thirty (30) days after being served with a copy, any party may file written objections with the

3   court and serve a copy on all parties.  Such a document should be captioned "Objections to

4   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

5   filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.

6   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

7   parties are advised that failure to file objections within the specified time may waive the right to

8   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9

10   IT IS SO ORDERED.

11   **Dated:    August 27, 2008                         /s/ John M. Dixon**
                                              UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28